In the Matter of POUGHKEEPSIE NEWSPAPERS, INC., Petitioner, v ALBERT M. ROSENBLATT, a Justice of the Supreme Court, et al., Respondents.

Second Department, March 14, 1983

APPEARANCES OF COUNSEL

*Van De Water & Van De Water* (*James E. Nelson* of counsel), for petitioner.

*William M. Kunstler* and *Mark B. Gombiner* for Lemuel Smith, respondent.

*William Stanton, Special District Attorney* (*B. Anthony Morosco* of counsel), respondent *pro se*.

*Robert Abrams, Attorney-General (Bridget Farrell* of counsel), for Albert M. Rosenblatt, respondent.

OPINION OF THE COURT

*Per Curiam.*

In this proceeding, brought pursuant to CPLR article 78, the petitioner Poughkeepsie Newspapers, Inc. challenges an order of the respondent Justice excluding the public from a hearing conducted to determine the admissibility of certain evidence in the trial of defendant Lemuel Smith. The issues raised require this court to strike a balance between the First Amendment's guarantee of freedom of the press as it pertains to public access to criminal proceedings and a defendant's Sixth Amendment right to a fair trial.

Defendant Lemuel Smith is currently on trial for murder in the first degree. The trial, now in its second month, concerns the highly publicized mutilation slaying of Correction Officer Donna Payant at the Green Haven Prison. In the course of the People's case, the prosecutor sought to introduce certain evidence of prior acts allegedly committed by the defendant. The defense objected to the introduction of the evidence, and requested a hearing to test its admissibility. It was further requested that the hearing, which was to be conducted out of the presence of the jury, be closed to the public. The respondent Justice, who was presiding at the trial, granted the application for a hearing and ordered the public excluded. It is this closure order which the petitioner now challenges. We are asked to vacate the respondent's closure order, and to direct the immediate release of the transcript of any portion of the hearing held in the absence of the public.

At oral argument, we were informed that, notwithstanding the expedited nature of this proceeding, the hearing at issue has been held and concluded, and the respondent Justice had made a determination as to the admissibility of the proffered evidence. As a result, it has been suggested that the petitioner's challenge to the closure order has been rendered moot. We disagree and conclude that it is appropriate to retain jurisdiction "because of the importance of

the question involved, the possibility of recurrence, and the fact that orders of this nature quickly expire and thus typically evade review" (*Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430, 437; see, also, *Globe Newspaper Co. v Superior Ct. of Norfolk County,* 457 US 596, ___, 102 S Ct 2613, 2618; *Nebraska Press Assn. v Stuart,* 427 US 539, 546; *Matter of Gannett Co. v De Pasquale,* 43 NY2d 370, 376, affd 443 US 368; *Matter of Eichner [Fox],* 73 AD2d 431, 435, mod on other grounds 52 NY2d 363). Accordingly, we address the merits of the petitioner's contention that the public was improperly excluded from the hearing at bar.

It is now firmly established that the press and the general public have a constitutional right of access to criminal trials founded upon the guarantees of the First Amendment (see *Richmond Newspapers v Virginia,* 448 US 555). Nevertheless, "[a]lthough the right of access to criminal trials is of constitutional stature, it is not absolute * * * But the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where * * * the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." (*Globe Newspaper Co. v Superior Ct. for County of Norfolk, supra,* p 2620.)

█ Thus, an application by a defendant to exclude the press and public from a courtroom is a request for extraordinary relief which should be granted only in those instances in which exceptional and compelling circumstances demonstrate a reasonable likelihood that the defendant's right to a fair trial may be jeopardized by an open proceeding.

Moreover, where closure is required, its duration should be as limited as circumstances allow with a view toward causing the minimum possible impact upon the public's right to be informed.

In the case at bar, the respondent Justice did not exclude the public from the trial itself, but only from a brief hearing to determine the admissibility of certain evidence.

In the usual case, such hearings are conducted before trial, and where prejudicial information reaches the public, its effect may ordinarily be dissipated through a careful and searching *voir dire* of potential jurors aimed at excluding those who have been exposed to adverse publicity (see, e.g., *People v Boudin,* 87 AD2d 133). In contrast, in the case at bar, *voir dire* has been completed, the jury is impaneled, and the trial is underway. In view of the intensive publicity surrounding the trial, press access to the hearing would undoubtedly raise a significant danger that information concerning the substance of the challenged evidence will reach the sitting jurors — and this notwithstanding admonitions to them not to read or listen to reports about the case. That danger would require additional interrogation of the jurors, needlessly and significantly prolonging this already lengthy trial and, in itself, causing additional prejudice. Moreover, such interrogation would not necessarily root out prejudice caused by public disclosure of inadmissible evidence (see *Groppi v Wisconsin,* 400 US 505, 510). And, indeed, it might well demonstrate the necessity for declaring a mistrial.

The evidence proffered by the prosecution was extremely damaging to the defendant and, at the time the respondent Justice issued his closure order, was of untested admissibility. Weighing these circumstances against the legitimate rights of the press, and noting particularly the circumstance that the trial is actually underway, we hold that the respondent Justice properly closed the hearing to the public pending a determination of the admissibility of the challenged evidence.

We turn next to the petitioner's alternative request that the official transcript of the hearing be immediately released. We are confronted at the outset with an unusual procedural impediment to the relief the petitioner seeks. As framed by the petitioner, the relief here requested is a "judgment in the nature of prohibition and mandamus". In the context of the case at bar, the extraordinary remedy of prohibition would lie only if the respondent Justice "acts or threatens to act without jurisdiction in a matter over which [he] has no power over the subject matter or where [he] exceeds [his] authorized powers in a proceeding over

which [he] has jurisdiction" (*Matter of State of New York v King,* 36 NY2d 59, 62). Moreover, it is generally said that as a condition precedent to the issuance of a writ of mandamus to compel, "a demand must ordinarily be made by the petitioner on the respondent that he do the act sought to be compelled, and the respondent must have refused to comply with the demand, either in distinct terms or by conduct from which a refusal could be implied" (23 Carmody-Wait 2d, NY Prac, § 145:109, p 596). Thus, our jurisdiction in matters such as these is limited to prohibiting a judge from doing that which he improperly threatens to do, or to direct him to do that which he has wrongly refused to do. In the case at bar, neither the papers submitted nor the statements of counsel at oral argument indicate that the respondent Justice has at any time refused any request to release the transcript of the hearing or any portion thereof. Accordingly, the petitioner must first seek such release from the respondent Justice himself.

We think it appropriate, however, to review briefly the principles of law which must guide the respondent Justice in reaching a determination should the petitioner apply to him for release of the transcript. As earlier noted, a hearing may be closed to the public at a defendant's request *only* where absolutely essential to insulate jurors or potential jurors from exposure to matters which may ultimately be ruled inadmissible (see, e.g., *Matter of Gannett Co. v De Pasquale,* 43 NY2d 370, 378, affd 443 US 368, *supra; Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430, 438-439, *supra; People v Harris,* 84 AD2d 63, 101, affd 57 NY2d 335). An appropriate respect for the inestimable service provided to the public by a thriving and untrammeled press requires that the press be given access to all information as quickly and as fully as possible consistent with a defendant's right to a fair trial. It has therefore been suggested that "any true public interest could be fully satisfied, consonant with constitutional free press guarantees, by affording the media access to transcripts redacted to exclude matters ruled inadmissible during [a] closed suppression hearing" (*Matter of Gannett Co. v De Pasquale,* 43 NY2d 370, 381, *supra*).

This court was informed at oral argument that, following the hearing, the respondent Justice ruled that some, but not all, of the evidence proffered by the prosecution would be admissible at trial. Consistent with the view that any interference with the freedom of the press and the public's right to know should be held to the absolute minimum necessary to protect a defendant's right to a fair trial, a transcript of the hearing, redacted so as to exclude matters pertaining to evidence which the respondent Justice has ruled to be inadmissible at trial, should immediately be made available to the press. Significantly, in the course of oral argument before this court the defendant's counsel conceded that his client would suffer no prejudice at his trial by the release to the press of so much of the hearing transcript as relates to evidence which the respondent Justice has ruled to be admissible. The redacted portion of the transcript, relating solely to matters held inadmissible, may properly be released at such time as the jury is sequestered or when, in the judgment of the respondent Justice, the possibility that the jury will learn of inadmissible evidence is otherwise negated, whichever is earlier.

The balance between a defendant's right to a fair trial and the right of the press and public to access to criminal proceedings is a most delicate one. Our holding today seeks to harmonize and give effect to those rights to the greatest extent possible by protecting the defendant against unfair prejudice while at the same time permitting the press to perform its traditional and essential function of informing the people of matters of public interest and concern.

MOLLEN, P. J., TITONE, MANGANO, BROWN and RUBIN, JJ., concur.