OPINION OF THE COURT
Lewis R. Friedman, J.
Whole Life Magazine (the applicant) has requested permission to take still photographs in the courtroom during the *1076 trial of this and several related small claims actions. The application raises important questions that have not yet been discussed in the reported cases. During an "experimental” period, from December 1, 1987 through May 31, 1989, Trial Judges may permit "audio-visual coverage” of judicial proceedings. (See, Judiciary Law § 218, and implementing Rules of Chief Administrative Judge [22 NYCRR part 131; the Rule].) This case is apparently the first in which the Rule has been invoked in civil rather than criminal proceedings. The court must determine the scope of the statute and Rule as well as the constitutional rights of the parties.
The court notified all interested parties of the application and conducted a conference on the record as required by Rule 131.4 (a) (22 NYCRR). The defendant and the applicant appeared and a letter was received from a potential defense witness. Defendant and her witness, referring to prior articles which had been published in the applicant, contended that the applicant was not seeking to conduct a "legitimate” press inquiry, but was seeking to harass and intimidate her.
As Jeremy Bentham eloquently explained, publicity is "the most effectual safeguard of testimony, and of the decisions depending on it, it is the soul of justice; it ought to be extended to every part of the procedure, and to all causes.” (Bentham, Treatise on Judicial Evidence, at 67 [1825].) Civil as well as criminal proceedings in New York have generally been open to the press and public. That is a tradition consistent with the English common law. Open proceedings are necessary so "that truth may be discovered, in civil as well as criminal cases” (Cornish’s Trial, 11 How St Tr 455, 460 [1685] [remarks of Sir John Hawles]; see, 2 Coke, Institutes of Laws of England, at 103 [6th ed 1681] ["all Causes ought to be heard * * * openly in Kings Courts”]; 3 Blackstone, Commentaries on Laws of England, at 372; Hale, History of Common Law of England, at 343-345 [6th ed 1820]). The English common-law writers shaped the American legal system. "Coke’s Institutes were read in the American Colonies by virtually every student of the law” (Klopfer v North Carolina, 386 US 213, 225 [1967]). Thus, the earliest public trial specification in the colonies provided: "That in all publik courts of justice for tryals of causes, civil or criminal, inhabitants of the said Province may freely come into, and attend the said court, and hear and be present, at all or any such tryals as shall be there had or passed, that justice may not be done in a corner nor in any covert manner.” (Concessions and Agreements of West New *1077 Jersey [1677], ch XXIII, quoted in 1 Schwartz, The Bill of Rights: A Documentary History, at 129 [1971].) The presumptive openness of the trial, "one of the essential qualities of a Court of Justice” (Daubney v Cooper, 10 B & C 237, 240, 109 Eng Rep 438, 440 [KB 1829]), continued in the colonies.
In that tradition Judiciary Law § 4, first enacted in 1829 (2 Rev Stat of NY, part III, ch III, tit I, § 1 [1st ed 1829]), provides: "The sittings of every court within this state, shall be public, and every citizen may freely attend the same.” The statute was "[declaratory of the existing law” (3 Rev Stat of NY, Appendix, at 694 [2d ed 1836]). The courts have long held that in civil cases this right may be asserted by the public and the press (Lee v Brooklyn Union Publ. Co., 209 NY 245, 248-249 [1913]; Matter of United Press Assns. v Valente, 308 NY 71, 89-93 [1954] [Froessel, J., dissenting]; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 437 [1979]; Matter of Herald Co. v Weisenberg, 89 AD2d 224, 226, affd 59 NY2d 378 [1983]).
The New York cases hold that there is a presumptive First Amendment right of public and press access to all court proceedings (People v Jelke, 308 NY 56, 65 [1954]). There is a "public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice” (Lee v Brooklyn Union Publ. Co., supra, 209 NY, at 248; Shiles v News Syndicate Co., 27 NY2d 9, 14 [1970]). There has, however, been substantial debate about access for the media to the courtroom at various pretrial stages of a criminal case, since the right of an accused to a fair trial may be endangered by improper pretrial publicity (see, e.g., Matter of Westchester Rockland Newspapers v Leggett, supra; Matter of Gannett Co. v DePasquale, 43 NY2d 370, 383 [1977], affd 443 US 368 [1979]; Matter of Associated Press v Bell, 70 NY2d 32, 38-39 [1987]; cf., Richmond Newspapers v Virginia, 448 US 555, 569-572 [1980]; Globe Newspaper Co. v Superior Ct., 457 US 596, 605-606 [1982]; Sheppard v Maxwell, 384 US 333, 350-353 [1966]).
The Supreme Court had long held that the press had no constitutional right to be present during a trial (e.g., Gannett Co. v DePasquale, 443 US 368, 379-381 [1979], supra; Estes v Texas, 381 US 532, 538-539, 583 [1965] [Harlan, J., concurring]; In re Oliver, 333 US 257, 270, n 25 [1948]); the Supreme Court recently changed that position (Richmond Newspapers v Virginia, supra; Globe Newspaper Co. v Superior Ct., supra). New York, which had also concluded that there was no *1078 independent right of the press (Matter of United Press Assns. v Valente, supra, 308 NY, at 80-82), presaged the Supreme Court’s changed position and held that in this State the public’s rights were "not so narrowly viewed” (Matter of Westchester Rockland Newspapers v Leggett, supra, 48 NY2d, at 437; People v Harris, 57 NY2d 335, 347 [1982]).
A "major purpose of that [First] Amendment was to protect the free discussion of governmental affairs” (Mills v Alabama, 384 US 214, 218 [1966]). "These expressly guaranteed freedoms [in the First and Fourteenth Amendments] share a common core purpose of assuring freedom of communication on matters relating to the functioning of government.” (Globe Newspaper Co. v Superior Ct., supra, 448 US, at 575 [plurality opn].)
The independent, and sometimes conflicting, constitutional rights of the accused in a criminal proceeding are, of course, not involved in civil cases. However, the right of public access to proceedings is of the same significance to the public whether the case is designated "civil” or "criminal”. The public has a right to know how the civil process of the courts is functioning and whether justice is being done in specific cases. The Supreme Court noted in Gannett Co. v DePasquale (supra) "in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases” (443 US, at 386-387, n 15). The rule has developed that access to the court during civil as well as criminal proceedings is presumed. The party seeking to exclude the media must carry the burden of showing that exclusion is required.
In 1987, the Legislature enacted Judiciary Law § 218, concluding that since "[t]he average law-abiding citizen is not afforded numerous opportunities to participate in civil and criminal court proceedings”, there should be greater access to the courts and reporting on them (L 1987, ch 113, § 1). Thus, there is now the "experimental” right of the press to have access with new, nondisruptive technologies so that there can be expanded "coverage of civil and criminal court proceedings, including trials” (Judiciary Law § 218 [1]). "[T]he taking of still or motion pictures in the courtroom by the news media” is within the new statute and Rule (Judiciary Law § 218 [2] [b]; Rule 131.2 [b]).
The defendant challenges the "bona fide” nature of the applicant. The court has no doubt that the term "news me *1079 dia”, as it appears in the statute and Rule, encompasses a "magazine” such as applicant’s.
" 'News media’ shall mean any news reporting or news gathering agency and any employee or agent associated with such agency, including * * * newspapers, magazines, trade papers, in-house publications, professional journals or any other news reporting or news gathering agency, the function of which is to inform the public, or some segment thereof.” (Judiciary Law §218 [2] [c]; Rule 131.2 [c].) The statute sets general classes of persons who may apply and, therefore, the court is precluded from making inquiry into the purpose of an applicant’s publication or why the applicant is interested in these proceedings. As the Legislature has determined, the courts should not have the right to screen applicants for "audio-visual coverage”. Such an inquiry would amount to "prior restraint”, long condemned as violative of the First Amendment (Near v Minnesota, 283 US 697 [1931]).
There is no doubt that this case and the companion cases, in which the applicant also seeks permission to take courtroom photographs, are "newsworthy”. Moreover, The New York Post, The New York Times and the applicant have written articles about "The Airplane Game,” the subject of the cases.
An analysis of the eight factors enumerated in the Rule shows that the only ones applicable are "whether the coverage would cause harm to any participant” and the "objections of any of the parties, prospective witnesses, victims, or other participants in the proceeding” (Rule 131.4 [c] [2], [6]). The defendant’s concern for her privacy is relevant, but not determinative. Applicant could be in the courtroom in any event, as are the hundreds of persons present during Small Claims Court every evening in this county; the presence or absence of cameras in the courtroom does not alter that fact. Still photographs could be taken as the parties enter and leave the courthouse and courtroom. Sketch artists could be present, as they have for many years, to cover the proceedings. The use of a nonintrusive still camera will not negatively affect the defendant’s privacy. The court cannot conclude that the defendant and her witness will be injured in any fashion as a result of the photographs (Matter of New York Times Co. v Bell, 135 AD2d 182, 186 [Kupferman, J., dissenting]). The applicant has already published information about the defendant’s business and residence addresses; that is a substantial reason for concluding that no additional harm will result to her (Globe Newspaper Co. v Superior Ct., 457 US 596, 608, supra). Since *1080 applicant has written about defendant at some length in the recent article about "The Airplane Game”, even if not in a flattering manner, it is hard to see how defendant would suffer from photographs taken in the courtroom. The advantage of public proceedings "more than counterbalances the inconveniencies to the private persons whose conduct may be the subject of such proceedings.” (Rex v Wright, 8 Durn & E 293, 298.)
The court’s analysis shows that there is no overwhelming reason to deny the application. Professor Wigmore has noted that open proceedings improve the quality of testimony and justice; officers of the court are more conscientious under "public gaze”; there is an "educative effect of public attendance”; and it increases public confidence in judicial remedies. (6 Wigmore, Evidence § 1834 [Chadbourn rev 1976].) Indeed, a case such as the one at bar is the typé of civil proceeding where public exposure will be of great value. The proceeding involves an alleged pyramid scheme. Publicity could encourage others who claim injury to seek redress in the courts; it could also discourage future involvement in pyramid schemes. The court takes no position on the merits of the case but notes that access to the small claims procedure to alleviate alleged wrongs is precisely the type of "significant community therapeutic value” the Supreme Court found in the First Amendment’s right to public trials. (Richmond Newspapers v Virginia, 448 US 555, 570, supra.)
This court concludes that there is a presumption that all civil proceedings, absent "compelling reasons” (Matter of Herald Co. v Weisenberg, 59 NY2d 378, 383 [1983], supra), should be open to the media for "audio-visual coverage” so long as it can be done within the confines of proper decorum and without harm to specifically protected rights. "The judges of this State share with the Legislature the view that an enhanced public understanding of the judicial system is important in maintaining a high level of public confidence in the judiciary” (Matter of People v Chambers, McQuillan, J., Dec. 29, 1987; CPLR art 78 relief denied Matter of New York Times Co. v Bell, supra).
The application is granted. Aggrieved parties are advised that they may promptly make application to the Administrative Judge for review (Rule 131.5). No stay of the trial will be granted to allow for that review (Rule 131.5 [c]).