■ RICH-HAVEN MOTOR SALES, INC., Respondent-Appellant, et al., Plaintiffs, v NATIONAL BANK OF NEW YORK CITY, Formerly Known as FLUSHING NATIONAL BANK, Appellant-Respondent.—In an action arising from the alleged wrongful dishonor of checks, (1) the plaintiff Rich-Haven Motor Sales, Inc. appeals on the ground of inadequacy and the defendant cross-appeals from so much of an amended judgment of the Supreme Court, Queens County (Durante, J.), dated April 28, 1989, as is in favor of Rich-Haven Motor Sales, Inc. and against the defendant in the principal sum of $663,807, and (2) the defendant appeals from an order of the same court, dated June 29, 1989, which denied its motion to unseal the transcript of an inquest as to damages.

Ordered that the amended judgment is modified, on the law and the facts, by reducing the amount awarded to Rich-Haven Motor Sales, Inc. from the principal sum of $663,807 to the principal sum of $512,824; as so modified, the amended judgment is affirmed insofar as appealed and cross-appealed from, and the matter is remitted to the Supreme Court, Queens County, for the entry of an appropriate amended judgment in the principal sum of $512,824, with interest at the statutory rate from February 15, 1974; and it is further,

Ordered that order is affirmed; and it is further,

Ordered that the respondent-appellant is awarded one bill of costs.

In February 1974 the defendant Flushing National Bank (hereinafter the bank) wrongfully dishonored several checks which had been issued by the plaintiff Rich-Haven Motor Sales, Inc. (hereinafter Rich-Haven) to various creditors and suppliers. Shortly thereafter, Rich-Haven, which was primarily engaged as a car dealership, closed its business. Rich-Haven commenced this action to recover damages it sustained as a result of the bank's refusal to honor its checks. After 10 years of litigation, summary judgment was granted against the bank based upon its failure to comply with a conditional order of preclusion. An inquest to assess damages was subsequently conducted; however, the bank failed to appear at this inquest. The bank later moved to vacate its default at the

inquest. The trial court granted this motion as well as an application by Rich-Haven to seal the transcript of the damages inquest. Following a second inquest, the trial court found in favor of Rich-Haven in the principal sum of $663,807. Utilizing the capitalized earnings method of valuation, the trial court concluded that Rich-Haven's business was worth $560,045, as of February 1974. The trial court further determined that the principal award should include the value of Rich-Haven's used cars and parts inventory, which totaled $88,762 as well as the sum of $15,000 which represented the balance of funds which the bank wrongfully seized from Rich-Haven's accounts.

At issue on appeal is the propriety of the trial court's award of damages. In addition, the bank separately appeals from an order which denied its postjudgment motion to unseal the transcript of the first inquest.

With reference to the denial of the bank's postjudgment motion to unseal the minutes of the first inquest on damages, we note that a court has inherent control over its own records and may order that those records be sealed in any case where the circumstances require it (see, Matter of Crain Communications v Hughes, 74 NY3d 626; see also, Lopez v City of New York, 95 Misc 2d 149, 151). In this case, we find that the trial court did not improvidently exercise that discretion.

Turning to the propriety of the damages award, Rich-Haven contends, inter alia, that the trial court erroneously excluded from the award a $67,000 loan which the bank had given to Rich-Haven. We disagree. It is a fundamental principle of contract law that an award of damages should place a plaintiff in the same position as that party would have been if the contract had not been breached (see, e.g., R & I Elecs. v Neuman, 66 AD2d 836, 837). In the case at bar, it is clear that if the defendant bank had not breached its obligations to Rich-Haven by wrongfully dishonoring its checks, Rich-Haven would still have been required to pay the bank $67,000 in satisfaction of the loan. Accordingly, the trial court correctly credited $67,000 to the bank and excluded this amount from the award of damages.

Rich-Haven's second contention on appeal is that the trial court erred when it refused to award it lost profits in addition to the award for the value of its business. A review of the record, however, reveals that the trial court accounted for future profits in its damages calculations and, thus, an additional award for lost profits would be duplicative.

The bank, in support of its cross appeal from the judgment, contends that the trial court's award should be vacated since the evidence adduced at the inquest revealed that Rich-Haven was insolvent. The bank further contends that a vacatur of the damages award would be appropriate since the wrongful dishonor of checks did not "proximately cause" the destruction of Rich-Haven's business.

Turning first to the issue of causation, we note that the allegations contained in Rich-Haven's complaint, insofar as they pertain to the question of liability, must be deemed admitted in light of the defendant's default which resulted in an award of summary judgment against it (see, *Flushing Natl. Bank v Rich-Haven Motor Sales,* 123 AD2d 663; *see also, Amusement Business Underwriters v American Intl. Group,* 66 NY2d 878, 880; *Rokina Opt. Co. v Camera King,* 63 NY2d 728; *Mendoza v Schlossman,* 87 AD2d 606). Accordingly, the trial court correctly concluded that the sole issue at the inquest was to determine the extent of the damages sustained by Rich-Haven and that the bank was precluded from contesting the fact that it caused those damages.

With respect to the amount of the award, we find that while the record does not support the bank's contention that Rich-Haven's business was worthless, a modification of the valuation award is necessary. The trial court assessed the value of Rich-Haven's dealership based upon a 1973 financial statement which was admitted in evidence. The trial court, in its memorandum decision, erroneously stated that the 1973 financial statement "was the only yearly financial statement put into evidence" and that it would have been "preferable to consider a longer period of earnings history".

Contrary to the trial court's findings, the record includes financial statements for the years 1970 through 1973. Thus, recalculation of the valuation award, based upon a longer period of earnings history, is possible. In reviewing Rich-Haven's financial statements, we find it necessary to discount the statement for the 1970 fiscal year in view of the fact that there was a six-month strike in 1970, during which the production of new cars came to a halt. The effect of this strike is reflected in the 1970 financial statements. We find that the 1970 statement should not be used as a predicate for determining the intrinsic value of Rich-Haven's business since the losses sustained that year were due to extraordinary circumstances, i.e., a nonrecurring strike.

However, recomputation of the valuation award, utilizing

the financial statements for the period 1971 through 1973, with a multiplier of 8 and at a discount rate of 25%, as suggested by Rich-Haven's expert witness, results in a finding that the value of Rich-Haven's business was $409,062. When we add to this figure the value of Rich-Haven's used car and parts inventory amounting to $88,762 as well as the sum of $15,000 which the bank wrongfully seized from Rich-Haven's accounts, we conclude that Rich-Haven is entitled to recover damages in the principal sum of $512,824. Accordingly, the matter is remitted to the Supreme Court, Queens County, for the entry of an appropriate amended judgment in the principal sum of $512,824, with interest at the statutory rate from February 15, 1974. Brown, J. P., Eiber, Harwood and Rosenblatt, JJ., concur.