OPINION OF THE COURT
Joan B. Lefkowitz, J.
FACTUAL BACKGROUND
In April 1986, plaintiff commenced an action against Dr. Richard Gold, a psychiatrist, and his professional corporation seeking monetary damages in medical malpractice, for allegedly sexualizing their relationship while she was a patient, and for fraud and battery. Defendants denied the allegations. Extensive discovery was conducted. Plaintiff publicized her allegations by giving interviews and appearing on nationally broadcast television shows.
Defendants moved for summary judgment to dismiss all three causes of action. The late Justice Kelly denied the motion in 1990. On April 11, 1991 the Appellate Division, Third Department, reversed so much of Justice Kelly’s order as refused to dismiss the fraud and battery causes of action. (Coopersmith v Gold, 172 AD2d 982.) The remaining cause of action in medical malpractice was remanded for trial on the merits as well as whether the doctrine of equitable estoppel was applicable regarding the Statute of Limitations.
In June 1992, plaintiff moved for an order permitting her to introduce testimony of other patients’ alleged claims of sexual contact with Dr. Gold. Defendants requested that the record be sealed. The applications came on to be heard on June 17, 1992 and no members of the public or press were in atten *596 dance. The court heard counsel in chambers on the record, reviewed the documents submitted and rendered a written decision that day denying the motion and granting defendants’ motion to seal the papers, transcript of the oral argument and decision of the court. No gag order was imposed. (75 Am Jur 2d, Trial, § 201; Annotation, Restraining Orders— Civil Cases, 56 ALR4th 1214, § 3 [A].)
In granting the sealing order, the court stated (decision of June 17, 1992, at 2-4):

"Sealing Motion

"Defendants move for an order sealing plaintiffs in limine motion and the papers in connection with the instant application.
"The court has ruled that the proposed testimony of other persons, set forth in some detail in the moving papers, inadmissible as evidence-in-chief at the trial. The trial is scheduled for September 14, 1992. However, revelation of the details by the media of the proposed testimony that cannot be presented as evidence-in-chief at the trial would cause great harm to all parties: (1) it is quite possible that some of the proposed witnesses will be identified thereby breaching an implicit (if not explicit) promise of confidence and anonymity between plaintiff and the proposed witnesses, and (2) possible taint of the juror pool in Rockland County as the pretrial publicity and notoriety of the alleged similar misdeeds of the defendant Dr. Gold would surely carry over into the jury selection process. It would serve no useful purpose to release the information contained in the motion papers at this time while attempting to contain the damage publicity would likely cause where the proposed evidence is not admissible in the first instance. (See, Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 438-439 [1979]; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 380-381 [1977], affd 443 US 368 [1977]; cf., Matter of Poughkeepsie Newspapers v Rosenblatt, 92 AD2d 232 [2d Dept 1983], affd 61 NY2d 1005 [1984].)
"Redacting the motion papers or the transcript of oral argument will not avoid the problems heretofore mentioned. At common law, notwithstanding the statutory provision that judicial proceedings generally be open to the public (Judiciary Law § 4), the right to inspect and copy judicial records is not absolute and it is a matter of the exercise of prudent judicial discretion whether such records should be sealed. (Matter of *597 Crain Communications v Hughes, 135 AD2d 351 [1st Dept 1987], appeal dismissed 71 NY2d 993 [1988], affd 74 NY2d 626 [1989].)
"Effective February 6,1991 is part 216 of the Uniform Rules for Trial Courts (22 NYCRR) pertaining to sealing of records. Section 216.1 (a) provides that an order sealing court records shall not be made unless 'good cause’ is shown. Good cause has been established here as details of the allegations if publicized extensively might taint potential jurors and might lead to identification of some or all of the proposed witnesses. Accordingly, confidentiality is essential at this stage of the proceedings and the records and transcript of the oral argument are directed to be sealed by the County Clerk, not to be opened except upon order of the court.
"At the appropriate time after final disposition of this case by settlement or verdict, the court will entertain an application to unseal the records provided that the anonymity of the proposed witness may still be maintained, perhaps by redaction of certain details. (Cf, Matter of Westchester Rockland Newspapers v Leggett, supra, 48 NY2d 430, 444.)”
Had the record not been sealed, an investigative reporter could have examined the County Clerk’s file and published a report thereof in the newspapers subject only to the law on defamation. (Shiles v News Syndicate Co., 27 NY2d 9 [1970], cert denied 400 US 999 [1971]; Star-Tel., Inc. v Walker, 834 SW2d 54 [Sup Ct, Tex 1992]; Annotation, Libel and Slander: Privilege of Reporting Judicial Proceedings, 43 ALR3d 634 [1972]; see, Smith v Daily Mail Publ. Co., 443 US 97 [1979] [can publish name of juvenile delinquent lawfully obtained]; Cox Broadcasting Corp. v Cohn, 420 US 469 [1975] [can publish rape victim’s name lawfully obtained from court records]; Craig v Harney, 331 US 367, 374 [1947] [cannot bar publication of information made public during trial]; see, Freihofer v Hearst Corp., 65 NY2d 135 [1985] [no cause of action for invasion of privacy or prima facie tort on publication of details of matrimonial from confidential court files].)
Jury selection began on or about September 14, 1992. Trial commenced on September 22, 1992 and continued for 15 days (including jury deliberations of parts of two days) during the period September 22 through October 22, 1992, exclusive of Jewish holidays when the court was not in session. The trial was open to the public and other media. During the period of time the case was ongoing, articles appeared in the dominant local newspaper, The Rockland Journal News, on 10 separate *598 occasions.[1] The local radio station, WRKL, also mentioned the trial at various times in its newscasts throughout the trial period. The verdict was reported by The Rockland Journal News and WRKL in Rockland County. The court is also aware that the verdict was reported by WHUD in Westchester County as well as by the New York Times.
During the course of plaintiffs case, Dr. Gold was called to testify and was asked by plaintiffs counsel whether he had sexual relations with the plaintiff. Dr. Gold answered in the negative. Of course, that testimony could not be impeached by the plaintiff by introduction of testimony of other patients who would have testified that they too had sex with Dr. Gold, since the impeaching testimony was too collateral to the main issues. (Fisch, Evidence § 486 [2d ed]; see simultaneous decision in Coopersmith v Gold, decided today denying motion to set aside verdict.) However, plaintiff was not bound by Dr. Gold’s response and did testify, herself, that Dr. Gold had told her about his sexual relations with other patients. (Spampinato v A.B.C. Consol. Corp., 35 NY2d 283 [1974]; Richardson, Evidence § 512 [10th ed].)
The parties rested on October 15, 1992. The next day the plaintiff requested leave to reopen, to present two rebuttal witnesses, to refute the inferences raised by Dr. Gold’s exhibition of his chest scars to the jury as part of his direct evidence that if plaintiff had seen his chest as she so testified when she claimed to have had sex with him, she would have had to *599 have seen the scars, which she denied seeing.[2] The rebuttal witnesses, it was claimed, would testify to being patients of Dr. Gold, who had sexual relations with him but who also did not see scars on his chest. The court directed counsel to submit written memoranda and denied leave to orally argue the point. On October 21, 1992 (the 17th and 18th being the weekend and the 19th and 20th being Jewish holidays) the court gave copies of its decision denying the plaintiff’s motion to counsel. On defense counsel’s application, that part of the record and decision were sealed. Again the basis for denial of the motion was that the issue was too collateral and highly prejudicial. The record was sealed because jury deliberations were to begin that day.
On October 22, 1992 the jury returned its verdict finding that Dr. Gold did not have sexual relations with the plaintiff or otherwise deviate from accepted medical standards. Plaintiff was given 15 days to formally move to set aside the verdict. On October 27, 1992 the court executed the within order to show cause presented by Gannett Suburban Newspapers, which publishes The Rockland Journal News, for leave to intervene and for an order unsealing the sealed portions of the record herein. Plaintiff joins in the application. Defendants oppose on the ground that the motion is premature and should not be entertained until exhaustion of the appeals process.
PROCEDURAL ISSUES
Movant correctly contends that it has standing to be heard on the questions of closure or sealing of records. Prior to issuance of such orders the court is obligated, where possible, to afford the news media an opportunity to be heard. (Matter of Herald Co. v Weisenberg, 59 NY2d 378, 383 [1983]; Matter of Gannett Co. v De Pasquale, supra, 43 NY2d 370, 381 [1977], affd 443 US 368 [1979]; Matter of Poughkeepsie Newspapers v Rosenblatt, 92 AD2d 232, supra [2d Dept 1983], affd 61 NY2d 1005 [1984].) That opportunity was not made available to the media at the pretrial conference and oral argument of June 17, 1992, as none expressed any interest to be present. (Cf., 75 Am Jur 2d, Trial, § 208.) Similarly, no such opportunity arose on the motion heard on papers at the conclusion of the trial.
*600 Movant requests leave to intervene. No statute is cited but apparently movant’s application is premised upon CPLR 1013 for leave to intervene by permission of the court. While the above-mentioned cases speak of an opportunity to be heard, it appears that intervention is not the mechanism whereby such opportunity is given. Rather, the news media are accorded standing to be heard, on request, prior to a ruling on closure or sealing, without the necessity of formal intervention.
At bar, the action is completed as the jury has rendered its verdict. A question arises whether there is still an action pending in this court for purposes of a nonparty to make a motion because if no action is pending, the court lacks jurisdiction to entertain the motion. (Matter of Town of Johnstown v City of Gloversville, 36 AD2d 143 [3d Dept 1971]; Matter of Cammaratta, 60 Misc 2d 521 [Sup Ct, Suffolk County 1969].) It may, however, be argued that since the court allowed plaintiff time to make a formal motion to set aside the verdict (CPLR 4404 [a]; 4405), continuing jurisdiction exists. (See also, Liss v Trans Auto Sys., 68 NY2d 15, 20 [1986]; Overmyer v Eliot Realty, 83 Misc 2d 694, 706-708 [Sup Ct, Westchester County 1975]; Siegel, NY Prac § 99 [2d ed].) Had final judgment been entered it would seem that no jurisdiction exists to entertain an application by a nonparty to unseal records, absent a statute granting such authority. (Times Herald Print. Co. v Jones, 730 SW2d 648 [Sup Ct, Tex 1987]; but see, Texas Civ Rules Pro § 76a [7] [providing for continuing jurisdiction by way of intervention]; Fla Stat Annot, tit 6, § 69.081 [6] [news media granted standing under Florida’s "Sunshine in Litigation” statute proscribing sealing court records to public hazards].)
Additionally, jurisdiction exists to modify court orders where substantial rights are not unduly affected, but it may be seriously argued whether revisory jurisdiction exists as to final orders except for ministerial changes. (Cf., Herpe v Herpe, 225 NY 323 [1919].)
Nevertheless, it is not necessary to delve deeply in the murky waters of procedure and jurisdiction because the sealing orders have already been made. Therefore, it appears that the appropriate remedy at this time is a motion to vacate the sealing orders pursuant to CPLR 5015 (a). (Matter of Crain Communications v Hughes, supra, 74 NY2d 626, 628 [1989]; Carpinello, Public Access to Court Records In Civil Proceedings: The New York Approach, 54 Alb L Rev 93, 105-106 [1989].) Since no prejudice has been claimed, the court will *601 ignore the defect in procedure (CPLR 2001) and convert the motion from intervention to vacatur (cf., CPLR 103 [c]; 3017 [a]) and proceed to the merits.
ACCESS TO COURTS/SEALING ORDERS
News media and the public have a Federal constitutional right pursuant to the First, Sixth and Fourteenth Amendments of the US Constitution, a presumptive State constitutional right under article I, § 8 of the New York State Constitution, a statutory right as set forth in section 4 of the Judiciary Law and section 12 of the Civil Rights Law and common-law right to access to judicial proceedings and a common-law right to inspect things filed or admitted into evidence therein. (Globe Newspaper Co. v Superior Ct., 457 US 596 [1982]; Richmond Newspapers v Virginia, 448 US 555 [1980]; In re National Broadcasting Co. v Myers, 635 F2d 945 [2d Cir 1980]; Matter of Newsday, Inc. v Sise, 71 NY2d 146, 153, n 4 [1987], cert denied 486 US 1056 [1988]; Matter of Associated Press v Bell, 70 NY2d 32 [1987]; Matter of Hearst Corp. v Clyne, 50 NY2d 707 [1980]; cf., Fed Rules Civ Pro, rule 77 [b].) However, these rights are not absolute. (Matter of Gannett Co. v De Pasquale, supra, 43 NY2d 370; Nowak, Rotunda & Young, Constitutional Law, ch 18, § VIII [c], 915-923 [2d ed]; 1 Antieau, Modern Constitutional Law, §§ 5:55-5:59 [1969]; Annotation, Press Access to Criminal Proceedings, 92 L Ed 2d 797 [1988]; Annotation, Public Trial — Criminal Cases, 61 L Ed 2d 1018 [1980]; Annotation, Public Trial— Preserving Order, 55 ALR4th 1170; Public Trial — Fearful Witness, 55 ALR4th 1196; Annotation, Rights of Accused — Exclusion of Press, 49 ALR3d 1007; Annotation, Access To Judicial Records, 175 ALR 1260 [1948]; 20 Am Jur 2d, Courts, §§ 61-62.)
Access to and publicity about trials is very desirable as they tend to insure that the truth will be told and the secrecy of inquisition-like proceedings will not occur. (Matter of Westchester Rockland Newspapers v Leggett, supra, 48 NY2d 430, 437-438 [1979]; 6 Wigmore, Evidence § 1834 [Chadbourn rev 1976]; 75 Am Jur 2d, Trial, § 205.) However, since publicity can have the opposite effect, resulting in an unfair trial, varied factors are to be considered by the court in weighing the public’s right to be present with the need to insure a fair trial. (Matter of Westchester Rockland Newspapers v Leggett, supra, 48 NY2d 430.) Once a compelling interest for closure or sealing is demonstrated, a narrowly tailored order to meet the *602 exigencies of the situation is appropriate. (Press-Enter. Co. v Superior Ct. of Cal., 464 US 501, 510 [1984]; Globe Newspaper Co. v Superior Ct., supra, 457 US 596; Matter of Poughkeepsie Newspapers v Rosenblatt, supra, 92 AD2d 232 [2d Dept 1983] [proper to exclude press from brief pretrial hearing on admission of certain evidence].)
Thus, closure of portions of a trial have been upheld. (People v Joseph, 59 NY2d 496 [1983]; People v Smallwood, 31 NY2d 750 [1972].) Similarly, access to documents or things admitted into evidence may be restricted or denied. (Nixon v Warner Communications, 435 US 589, 598-599 [1978]; Matter of Hearst Corp. v Vogt, 62 AD2d 840 [3d Dept 1978]; People v Colon, Sup Ct, Westchester County, June 18, 1992, Cowhey, J., indictment No. 91-1203-01-02 [denying Gannett Newspapers the right to view a videotape shown at a criminal trial]; see, Civil Rights Law § 50-b; Deborah S. v Diorio, 153 Misc 2d 708 [Civ Ct, NY County 1992].) Consequently, restriction or denial is appropriate where court files could "become a vehicle for improper purposes”. (Matter of WNYT-TV v Moynihan, 97 AD2d 555, 556 [3d Dept 1983].)
While most of the principles regarding the public nature of trials arise from criminal cases they are, of course, applicable to civil cases. (Matter of Herald Co. v Weisenberg, supra, 59 NY2d 378, 383; Matter of Westchester Rockland Newspapers v Leggett, supra, 48 NY2d 430, 437-438; Matter of Oles v Houston, 138 Misc 2d 1075 [Civ Ct, NY County 1988]; 75 Am Jur 2d, Trial, § 205, at 430; see, Richmond Newspapers v Virginia, supra, 448 US 555, 580, n 17; Annotation, Exclusion of Media from Civil Trial, 79 ALR3d 401 [1977]; Annotation, Civil Proceedings — Public Access, 96 ALR Fed 769 [1990]; Comment, The First Amendment Right of Access to Civil Trials After Globe Newspaper Co. v Superior Court, 51 U Chi L Rev 286 [1984].) In civil cases the "common-law right to inspect and copy judicial records is not absolute * * * and the determination of whether access to such records is appropriate is best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.” (Matter of Crain Communications v Hughes, supra, 135 AD2d 351 [1st Dept 1987], affd 74 NY2d 626 [1989], rearg denied 74 NY2d 843 [sealed record on settlement of case].)
A sealing order is not "an unconstitutional restriction of the freedom of the press”. (Danziger v Hearst Corp., 304 NY 244, 249 [1952]; Annotation, Public Access to State Courts Records, *603 84 ALR3d 598 [1978]; Annotation, Sealing of Confidential Matter, 19 ALR Fed 970 [1974].) "[A] court has inherent control over its own records and may order that those records be sealed in any case where the circumstances require it.” (Rich-Haven Motor Sales v National Bank, 163 AD2d 288, 289 [2d Dept 1990], lv denied 76 NY2d 709 [1990] [sealed minutes of first inquest on vacatur of default on damage phase of trial]; see, Matter of Dorothy D., 49 NY2d 212 [1980] [recognizing rule]; Matter of Richard S. v City of New York, 32 NY2d 592, 596 [1973] [seal confidential records]; Matter of Werfel v Fitzgerald, 23 AD2d 306, 311 [2d Dept 1965] [semble]; 2a Weinstein-Korn-Miller, NY Civ Prac ¶ 2102.02; cf., Matter of News-day, Inc. v Goodman, 159 AD2d 667 [2d Dept 1990] [access to petit juror questionnaires denied].)
Sealing orders usually pertained to matters or things that were considered to be confidential, such as juvenile proceedings, family related matters and unwarranted disclosure of trade secrets and the like (Matter of Werfel v Fitzgerald, supra, 23 AD2d 306; Murphy v Productive Transp. Servs. Corp., NYLJ, Oct. 15, 1991, at 34, col 5 [Sup Ct, Rockland County]; 6 Wigmore, Evidence § 1835 [Chadbourn rev 1976]; 8 Wigmore, Evidence § 2212 [3] [McNaughton rev 1961]; 75 Am Jur 2d, Trial, §§ 206, 207, 209; Annotation, Trial—Safeguarding Trade Secrets, 62 ALR2d 509 [1958]; Comment, op. cit, 51 U Chi L Rev 286, 299-313), although such orders were granted in other types of situations. (See, e.g., Rich-Haven Motor Sales v National Bank, supra, 163 AD2d 288.) However, the general rule favors nonsealing of records: "When physical evidence is in a form that permits inspection and copying without any significant risk of impairing the integrity of the evidence or interfering with the orderly conduct of the trial, only the most compelling circumstances should prevent contemporaneous public access to it.” (In re National Broadcasting Co. v Myers, supra, 635 F2d 945, 952.)
On the other hand, "[t]hat the purpose of a requested inspection of a court’s record is to publish indecent evidence may be a proper ground for denying an inspection of the record”. (20 Am Jur 2d, Courts, § 62, at 429, n 17; cf., Domestic Relations Law § 235 [1], [2].)
As of March 1, 1991, section 216.1 of the Uniform Rules for Trial Courts (22 NYCRR) provides guidelines on sealing records in civil cases. Indulging in the aforementioned presumption of access to court records, the pertinent language of the section is set forth in subdivision (a) as follows: "Except where *604 otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties.”
One of the first cases to discuss the embryonic version of the proposed section applied its spirit. (Fields v Buterman, NYLJ, Oct. 29, 1990, at 25, col 2 [Sup Ct, NY County].) The cited case involved an action for dissolution of a medical practice in obstetrics and gynecology. The doctor partners accused each other of wrongdoing and a request was made that part of the record be sealed. The allegations of wrongdoing involved improper monetary charges and sexual misconduct. The court adverted to proposed section 216.1 and refused to seal the record. Justice Altman commented:
"In balancing the interests of the parties with those of the public, it is clear that the right of the public to be informed of the allegations in these papers far outweighs the rights of the parties * * * [These allegations] exposed conduct which can have an adverse impact on a large segment of the public. The public not only has a right to know, it has a need to know.
"At the very least, past, present and future patients of these parties have a right to know about the cloud on the doctors’ capacity to practice medicine. Only a public airing of the cross accusations will afford these women, because by definition all the patients are female, the opportunity to make a conscious and knowing decision regarding future care by these men in face of the serious allegations of misconduct.” (See also, C.L. v Edson, 140 Wis 2d 168, 409 NW2d 417 [Ct App, Wis 1987] [record of settled case not sealed on charges that defendant psychiatrist and members of his clinic sexually abused patients].)
In C.L. v Edson (supra), the court dealt with its own version of a sealing statute and in opening a sealed record containing allegations of sexual abuse by a psychiatrist and others the court said (140 Wis 2d, at 183, 409 NW2d, at 422): "Finally, the defendants in this case were members of a highly regulated profession. Such regulation shows the public’s interest in scrutinizing alleged wrongdoing among members of the psychiatric profession. These considerations outweigh the parties’ objections to disclosure.”
The court has reviewed the Bill Jacket-like contents of the *605 various submissions to the Office of Court Administration concerning the substance of proposed section 216.1.[3] The AVi inches of documentary material consists of comments by Judges, attorneys, law professors and other interested citizens and includes copies of law review articles in process and published, sealing rules from other jurisdictions and summaries of statements made before a subcommittee of Congress regarding a proposed amendment to the Federal Rules of Civil Procedure. The gist of the commentary insofar as relevant here is as follows: (1) the primary purpose behind the proposed section was to prevent parties from designating documents or records as confidential and obtaining court orders sealing those records as a matter of course, and (2) to provide access to records, particularly in cases of environmental hazards or harmful consumer products. Those opposing the section or seeking modification expressed the view that the section would hinder settlements and be applied to discovery material (see also, Marcus, Myth & Reality in Protective Order Litigation, 69 Corn L Rev 1 [1983]). Other comments revolved around burden of proof and the meaning of "good cause” (citing, inter alia, CPLR 2004, 7108).
The section as adopted provides for openness of judicial records consistent with New York law on accessibility to other types of records under the Freedom of Information Law (Public Officers Law art 6). Subdivision (b) of section 216.1 permits protective orders to continue to apply to discovery material not filed with the court.
Following enactment of part 216 of the Uniform Rules for Trial Courts, several court decisions sealed records of no real public interest. (Feffer v Goodkind, Wechsler, Labaton & Rudoff 152 Misc 2d 812 [Sup Ct, NY County 1991] [internal finances of dissolved law firm]; Matter of Winston, NYLJ, Dec. 30, 1991, at 31, col 5 [Sur Ct, Westchester County] [financial records of decedent’s business]; Griffin v Scudder, Stevens & Clark, NYLJ, June 28, 1991, at 22, col 3 [Sup Ct, NY County] [confidential records].) Nonetheless, there is a presumption of openness embodied in the rule and where good cause has not been demonstrated, the records should not be sealed. (Bingham v Struve, NYLJ, July 10, 1991, at 21, col 5 [Sup Ct, NY County] [alleged defamatory statement not sealed]; cf, Munzer v Blaisdell, 268 App Div 9, 11 [1st Dept 1944].)
*606 The phrase "good cause” in the rule (cf., Fed Rules Civ Pro, rule 26 [c]) is a term of art that has varied meaning in myriad contexts. (18A Words & Phrases, Good Cause, at 26-70, 1992 Supp, at 2-66; Black’s Law Dictionary 623 [5th ed 1979] ["Substantial reason * * * Legally sufficient ground or reason”].) However, with respect to sealing questions one court observed that " 'Good cause’ is a well established legal phrase. Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action.” (In re Alexander Grant & Co., 820 F2d 352, 356 [11th Cir 1987]; see, Seattle Times v Rhinehart, 467 US 20 [1984].) "Good cause” as used in section 216.1 presupposes that compelling circumstances must be shown by the party seeking to have the records sealed. (Carpinello, op. cit., 54 Alb L Rev, at 102-105.) What it all boils down to, however, is the prudent exercise of the court’s discretion. (Matter of Crain Communications v Hughes, supra, 135 AD2d 351; Carpinello, op. cit., 54 Alb L Rev, at 108.) In exercise of that discretion, the court engages in a balancing process weighing the potential for harm and embarrassment to the litigants and public alike. (In re Alexander Grant & Co., supra, 820 F2d 352.)
The burden of proof on a sealing application is upon the party who desires that the record be impounded or, as here, remain sealed because of the need to establish compelling circumstances for the secrecy, the presumption of openness of court records and the fact that the news media usually are unaware of the reasons expressed by the parties or, in this case, the court in having already sealed the record. (75 Am Jur 2d, Trial, § 210; cf., Annotation, Modification of Protective Order, 85 ALR Fed 538 [1987].)
The underlying medical malpractice action concluded on October 22, 1992 when the jury reported its verdict in favor of the defendant, to wit: that Dr. Gold did not sexualize the doctor-patient relationship and had not deviated from accepted standards of medical practice during the course of his treatment of the plaintiff. If the underlying action was a criminal proceeding defendant would be entitled to an order sealing the court records. (CPL 160.50 [1] [on termination of criminal action in favor of accused seal records except in "the interests of justice”]; see, In re New York State Temporary Commn. of Investigation, NYLJ, Nov. 3, 1992, at 28, col 1 [Westchester County Ct].) However, our civil practice statutes have no counterpart to CPL 160.50 and this motion, therefore, *607 is governed by section 216.1 and common-law principles applicable to civil records.
By separate decision today the court has denied plaintiffs motion to set aside the verdict. Consequently, the Coopersmith v Gold matter is seemingly finally concluded at the trial court level. Therefore, the reasons previously expressed in my prior rulings on sealing portions of the record — possible taint of the jurors on selection and during trial as well as the highly prejudicial nature of the proposed testimony on collateral matters — no longer obtains. Defendants have not met their burden of proof to maintain secrecy and failed to prove that good cause exists to continue the sealing. Additionally, it is noteworthy that after the jury verdict The Rockland Journal News published articles about plaintiffs motion for a new trial and plans to appeal. The stories discuss allegations that Dr. Gold may have had sexual relations with other patients, two of whom would have testified that they did not recall seeing Dr. Gold’s scars. Under all of the circumstances, the court concludes that the presumption of openness must be given effect to its records and decisions particularly where, as here, Dr. Gold practices in a highly regulated profession and female patients ought to be aware of the serious allegations made so that they may make an intelligent decision to become or continue as a patient. Of course, the allegations are only that and, no more but in the doctor-patient arena, itself of public concern, disclosure should be the rule and not the exception when public records of proceedings involving alleged doctor sexual contact with nonparties occurs.
The motion by Gannett Suburban Newspapers for an order vacating the sealing orders of the court is granted and the other witnesses’ names, to the extent they may be identifiable in the submissions to the court, are to be redacted as agreed to by Gannett in Mr. Walsh’s affidavit.

. In support of its motion to unseal the records, Gannett has annexed as an exhibit copies of published articles on sex between a psychiatrist and patient, unrelated to this case, to show the public interest on the subject. This is not without significance for, otherwise, the media’s self-interest in a particular case on grounds of public interest would become a self-fulfilling prophecy. Interestingly, while this motion was pending, The Reporter Dispatch (Northern Westchester edition), a Gannett Suburban Newspapers publication, reported on November 7,1992 about a malpractice case pending in the Supreme Court, Westchester County, where a former patient of a psychiatrist claims he sexualized their relationship under the guise of therapy. (The Reporter Dispatch, Nov. 7, 1992, at 5B, col 3; cf., Public Officers Law § 89 [4] [c] [i] [reasonable attorney’s fees may be awarded against an agency (but not a court) that wrongfully withholds a record which was "of clearly significant interest to the general public”].) The United States Supreme Court in Gannett Co. v De Pasquale (443 US 368, 386-387, n 15 [1979], supra) said: "While the operation of the judicial process in civil cases is often of interest only to the parties in the litigation, this is not always the case [citing famous or infamous examples]. Thus, in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases.” The quoted words of Justice Stewart apply with force to the case at bar.

. It was entirely appropriate for the court to permit Dr. Gold to exhibit part of his anatomy to the jury. (8 Wigmore, Evidence § 2216 [8] [McNaughton rev 1961].) Indeed, had plaintiff requested such exhibition in support of her case, it would have been granted. (Id., § 2220 [9].)

. The original documents are maintained by the Office of Court Administration but the contents have been photocopied and are now available at the Supreme Court libraries in Rockland and Westchester Counties.