OPINION OF THE COURT
Carol R. Edmead, J.
Plaintiffs commenced this negligence action against defendant, New York University (NYU), for personal injuries sustained when they were sexually assaulted on defendant’s premises. Plaintiffs now move[1] by order to show cause for an or *868 der (1) permitting plaintiffs to file an amended complaint to replace their names with pseudonyms pursuant to Civil Rights Law § 50-b, (2) sealing all court records that contain their true names pursuant to 22 NYCRR 216.1 and CPLR 3103,[2] (3) permanently enjoining NYU or any of its affiliates from publishing names, or in any other way making the identities of the plaintiffs to this action known, and (4) granting a permanent injunction to protect the plaintiffs’ identities retroactively and in perpetuity.
Plaintiffs claim that, on November 2, 2003, they were sexually assaulted as a result of, inter alia, NYU’s negligence in failing to properly secure the premises. It is alleged that plaintiffs have undergone psychotherapy as a result of this assault. One of the plaintiffs has withdrawn from NYU as a student and returned to her parents’ home; this plaintiff is not currently attending college. The second plaintiff is still a student at NYU.
Plaintiffs contend that they recently learned that the NYU student newspaper, Washington Square News, obtained court documents containing plaintiffs’ actual names, and may plan to publish same in the student newspaper. Plaintiffs argue that due to the sensitive nature of their injuries, plaintiffs would suffer additional, irreparable harm if their identities were published in the school newspaper or any other publication. Plaintiffs claim that they did not foresee the school newspaper’s recent actions and failed to bring their suit anonymously. It is also argued that NYU will suffer no prejudice from the concealment, and that the court should exercise its discretion to protect the identities of plaintiffs.
In response, NYU argues that, since it has no control over Washington Square News in its news gathering, reporting or editorial matters, any order entered against NYU alone cannot bind Washington Square News, an unincorporated association legally independent of NYU. Because of the lack of control over Washington Square News, NYU cannot adequately represent the interests of the newspaper in this matter. NYU has no inter *869 est in publicizing the names of the plaintiffs in any publication controlled by NYU. NYU also points out that plaintiffs have chosen to phrase their request as directed to “any affiliate” of NYU; however, the term “affiliate” is vague and not legally defined. Since Washington Square News has its own First Amendment rights, over which NYU exercises no control, any order purporting to bind Washington Square News through its relationship to NYU cannot be justified, and any injunction using that term and intended to affect the rights of Washington Square News is defective and without basis in law or fact.
Washington Square News separately moves for an order (1) granting it intervenor status for the limited purpose of challenging the relief sought by plaintiffs, (2) denying any permanent prohibition of the publication of plaintiffs’ actual names, and (3) denying the request to seal court records containing plaintiffs’ true names. In support, Washington Square News submits an affidavit from its editor in chief, Bret Collazzi, and the affidavit of its legal counsel, Karim Abdulla.
Collazzi states that Washington Square News is “the campus newspaper and independent voice of the students” at NYU. Washington Square News is operated “by and for the students at NYU and strives to report events and issues of concern for the campus community.” Collazzi further states that this newspaper does not receive any direct funding from NYU; instead, it is funded through advertising, and receives a small portion of its funding from an endowment administered through an NYU account. Washington Square News published three articles related to the subject incident, with the most recent article on October 7, 2004 resulting from a routine search of court records for the purpose of journalistic reporting activities. Consistent with its yearly practice, Washington Square News sent a reporter to the courthouse this fall to search court records and identify cases in which NYU is a party. It was the reporter who discovered plaintiffs’ case.
According to Abdulla, Washington Square News is an independent press organization that receives no funding from NYU and exercises its own independent editorial judgment. Abdulla also states that any information concerning plaintiffs’ identities was obtained by Washington Square News as a result of independent news gathering, to wit: reviewing public judicial documents under plaintiffs’ actual names. Abdulla also claims that NYU’s status as a party has played no part in Washington Square News’ knowledge of this action.
*870 Accordingly, Washington Square News argues that the application sought by plaintiffs constitutes a prior restraint upon publishing information of legitimate public concern in violation of its First Amendment free speech right. Here, it is argued, plaintiffs’ desire to maintain their privacy, despite the fact that they openly filed this action under their own names, is insufficient to overcome the heavy presumption against prior judicial restraints. Washington Square News also argues that, consistent with the express language of Civil Rights Law § 50-b, New York case law has maintained the position that Civil Rights Law § 50-b applies only to disclosure by a “public officer or employee” and does not apply to the news media. Furthermore, plaintiffs’ request to seal all court documents that contain their true names is unavailing. In this respect, it is argued that plaintiffs failed to establish that (1) nondisclosure is essential to preserve higher values, (2) no reasonable alternative to sealing will protect the asserted interest, and (3) any order limiting public access is drawn as narrowly as possible. Washington Square News submits that there is nothing to be gained by sealing records when the “cat is already out of the bag.” Further, there is no indication that a more narrowly drawn alternative to sealing, such as redaction of plaintiffs’ names from the filed court documents, would not serve the same purpose of protecting plaintiffs’ privacy interests.
In opposition to Washington Square News’ intervention motion, plaintiffs argue that Washington Square News is already a party to this action and not a legal entity, and, therefore, is not a proper intervenor. Plaintiffs point out that Washington Square News is sponsored by the journalism department of NYU, admittedly receives funds from an NYU account, has offices located on NYU property for which they are not paying rent, and that its Web site displays the NYU trademark. Therefore, plaintiffs argue, Washington Square News exists as a student organization under the umbrella of NYU and is simply part of NYU. Furthermore, Washington Square News’ contention that independent editorial judgment confers independent legal status is without merit. In this regard, plaintiffs argue that, pursuant to General Business Law § 130, any person transacting business under any name or designation other than its real name must file a certificate setting forth the name of the person(s) conducting or transacting the business. Furthermore, General Business Law § 130 (9) prohibits any person carrying on or transacting business “from maintaining any action or proceeding in any *871 court. . . in a name other than its real name” until such certificate is filed. Here, plaintiffs argue, Washington Square News has set forth no evidence to support the contention that it is a legal entity pursuant to General Business Law, and, therefore, has no capacity to intervene.
Plaintiffs further argue that Civil Rights Law § 50-b should be applied to protect plaintiffs’ identities in this civil action, and that the “news media” exception to section 50-b does not apply where the “news media” is the defendant. In the latter regard, plaintiffs contend that any “news media” defendant may be entitled to the sexual assault victim’s identity and thereafter be free to publish same. Such a “perverse” application could not have been intended by the “news media” exception, and, to avoid this consequence, such exception must be interpreted to apply only to “news media” not a party to this action.
Analysis
Intervention
Before addressing the merits of plaintiffs’ application, the court must determine whether Washington Square News’ application to intervene for the purpose of opposing the relief sought by plaintiffs should be granted. However, the determination as to whether intervention is warranted requires consideration of the branch of plaintiffs’ application to enjoin the publication of plaintiffs’ true names by NYU and its “affiliates.”
As to intervention, CPLR 1012 sets forth the basis under which a person may intervene as of right, and provides, in relevant part, that any person shall be permitted to intervene as of right when the representation of the person’s interest by the parties is or may be inadequate and the person is or may be bound by the judgment (CPLR 1012 [a] [2]).
In order to assess the merits of Washington Square News’ contentions, the court must first define the interests alleged to be insufficiently represented and determine whether such interests are in fact inadequately represented by the named party, NYU. Washington Square News is “the campus newspaper and independent voice of students at New York University, operated by and for students, and intended to benefit the entire campus community.”[3] Counsel for Washington Square News opposes any form of concealment of plaintiffs’ true names. Counsel for NYU, on the other hand, states that NYU does not oppose *872 the use of pseudonyms in place of plaintiffs’ true names and will rely on this court’s application of case law concerning sealing. Furthermore, it is uncontested that NYU has no interest in publicizing the names of plaintiffs in any publication controlled by NYU, and agrees to refrain from doing so; Washington Square News, on the other hand, pursues its right to publish plaintiffs’ names, a position clearly inconsistent with that of NYU.
Plaintiffs argue that Washington Square News and NYU are taking different positions on plaintiffs’ application in order to create a separation between the two where none exists, and, therefore, cannot overcome the fact that they constitute the same defendant. The court disagrees. Indeed, plaintiffs have sought to enjoin NYU and Washington Square News from publicizing plaintiffs’ names; having fashioned their application in such a way, plaintiffs, and not NYU or Washington Square News, have created the source of the divergent positions taken by Washington Square News and NYU.
Thus, Washington Square News has established that its interests on the issues of use of pseudonyms, sealing, and whether its publication of plaintiffs’ names is adequately represented by NYU presented by plaintiffs’ application are inconsistent with those of NYU, and, therefore, that its interests are inadequately represented by NYU.
With respect to the second prong of CPLR 1012 (a) (2), the Court of Appeals has held that whether a movant for intervention “will be bound by the judgment within the meaning of [CPLR 1012 (a) (2)] is determined by its res judicata effect.” (Vantage Petroleum v Board of Assessment Review of Town of Babylon, 61 NY2d 695, 698 [1984]; see also Matter of Tyrone G. v Fifi N, 189 AD2d 8 [1st Dept 1993].) Only a party to an action, or one in privity with a party, may be bound by the res judicata effect of a judgment in that action (see Green v Santa Fe Indus., 70 NY2d 244 [1987]), and, in this regard, it is the possibility rather than the certainty that governs (Siegel, NY Prac § 180 [3d ed]). Case law holds that the movant should be given the benefit of the doubt (id.). The potentially binding nature of the judgment on the proposed intervenor is the factor that invokes this provision (id.).
“[T]he term privity does not have a technical and well-defined meaning” (Watts v Swiss Bank Corp., 27 NY2d 270, 277 [1970]). Rather, it “is an amorphous concept not easy of application” (D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 *873 [1990]).[4] “It includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action (Restatement, Judgments, §§ 81-90)” (Watts v Swiss Bank Corp., supra, 27 NY2d at 277).
Although the face of plaintiffs’ order to show cause indicates an attempt to enjoin “NYU” and its “affiliates” from publishing the true names of plaintiffs, and does not expressly identify Washington Square News, plaintiffs have identified Washington Square News in their supporting papers as the organization that prompted their filing of the order to show cause. Thus, it cannot be disputed that the scope of plaintiffs’ application to enjoin NYU, as a defendant, includes Washington Square News as an “affiliate of NYU,” subject to their injunction application. To the degree that plaintiffs intend for the court to enjoin NYU as well as Washington Square News from publication, any order granting plaintiffs’ relief would result in plaintiffs seeking enforcement against Washington Square News for violation of the terms of such order. Therefore, since Washington Square News is the organization sought to be bound by a determination by this court on plaintiffs’ motion, intervention as a right has been implicated.
Plaintiffs’ opposition to intervention is premised on their claim that Washington Square News, as an “affiliate,” is already a party to this action, and, therefore, need not intervene. To demonstrate that Washington Square News falls within the umbrella of defendant NYU, and the close nature of the relationship between NYU and Washington Square News, plaintiffs rely on the fact that NYU pays Washington Square News’ American Express corporate account bills and other expenses, provides office space on NYU’s premises rent free, and permits Washington Square News’ Web site to contain the letters “NYU.”
There can be no doubt that NYU benefits from publications by Washington Square News (see Mazari v State of New York, 109 Misc 2d 1092 [Ct Cl 1981]). However, the fact that NYU “created a climate wherein the student newspaper flourished by furnishing office space” and paying for certain of its expenses is *874 “nothing more than a form of financial aid to the newspaper which cannot be traded off in return for editorial control” (id. at 1101). And, these factors, which might suggest an agency relationship, are insufficient to overcome the University’s lack of control over the newspaper, and “no form of editorial control over constitutionally protected expression in student publications can be based on the University’s power of the purse” (id.).
Washington Square News also takes the position that it cannot and should not be bound by a court order in favor of plaintiffs, since Washington Square News is not an affiliate, and, therefore, not an entity against which such order may be enforced. However, it cannot be disputed that plaintiffs’ application to enjoin publication of plaintiffs’ names is directed at Washington Square News.
Thus, the court determines that there is a sufficient showing that Washington Square News may be bound by a determination of this motion, based on the scope and intent of plaintiffs’ application.
As such, intervention by Washington Square News is warranted.
Application to Protect Plaintiffs’ Privacy
Turning to the merits of plaintiffs’ application to seal the court records of this case, it is noted that, under 22 NYCRR 216.1, all documents and records filed with the court are “court records,” and, presumptively, open to the public. Notwithstanding, 22 NYCRR 216.1 (a) provides that:
“Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties. Where it appears necessary or desirable, the court may prescribe appropriate notice and opportunity to be heard.” (Emphasis added.)
Thus, to overcome the presumption of openness, plaintiffs bear the burden of demonstrating that good cause exists to seal the court records (22 NYCRR 216.1; see Banco Labs, v Chemical Works of Gedeon Richter, 274 AD2d 1, 8 [1st Dept 2000]; Coopersmith v Gold, 156 Misc 2d 594, 606 [1992]). To demonstrate “good cause,” plaintiffs must establish that “compelling cir *875 cumstances” exist to justify secrecy (Coopersmith v Gold, supra, 156 Misc 2d at 606; Matter of Herald Co. v Weisenberg, 59 NY2d 378, 384 [1983]). The court’s task in determining whether sealing is warranted is to balance the interests of the public as well as of the parties.
With respect to the public’s interest, under the First and Sixth Amendments, as applied to the states by the Fourteenth Amendment, the public, as well as the press, is generally entitled to have access to court proceedings (Danco Labs, v Chemical Works of Gedeon Richter, 274 AD2d 1 [2000], supra).
Among the values of access in civil cases is that “the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud” (id. at 7). Furthermore, the very openness of the process should provide the public “with a more complete understanding of the judicial system and a better perception of its fairness” and serves to “ensure that [the proceedings] are conducted efficiently, honestly and fairly” (id.). Publicity about trials “tend[s] to insure that the truth will be told and the secrecy of inquisition-like proceedings will not occur” (id., quoting Coopersmith v Gold, 156 Misc 2d 594, 601 [1992]; see, Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 437-438 [1979]). The public interest in openness is particularly important on matters of public concern, even if the issues arise in the context of a private dispute (Danco Labs., supra at 7), about which secrecy, then, may well prove the greater detriment to the public (see generally, Doggett and Mucchetti, Public Access to Public Courts: Discouraging Secrecy in the Public Interest, 69 Tex L Rev 643, 648 [1991]).
The first Supreme Court decision to recognize a right of access to trials was Richmond Newspapers, Inc. v Virginia (448 US 555 [1980]; Milani, Doe v Roe: An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort, 41 Wayne L Rev 1659 [1995]). The Court reasoned that the purpose of the First Amendment is to secure “freedom of communication on matters relating to the functioning of government” (Richmond Newspapers at 575). Observing that the Bill of Rights was enacted against the backdrop of the long history of trials being presumptively open, public access to trials is regarded as an important aspect of the process itself; the conduct of trials “before as many of the people as chuse to attend” was regarded as one of “the inestimable advantages of a free English constitution of government” (Milani, Doe v Roe: *876 An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort, 41 Wayne L Rev 1659, 1666 [1995]).[5] The Court thus concluded that “[i]n guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to those explicit guarantees” (id., quoting 448 US at 575). The Court also found that the First Amendment’s guarantee of the right to assembly, which assures that individuals have the right to access public places for the purpose of exercising other First Amendment rights, supported the right of access to trials (id., citing 448 US at 577-578). It was also stated that “a trial courtroom also is a public place where the people generally — and representatives of the media — have a right to be present, and where their presence historically has been thought to enhance the integrity and quality of what takes place” (id. at 1666-1667, quoting 448 US at 578). Therefore, “the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and ‘of the press could be eviscerated’ ” (id. at 1667, quoting 448 US at 580). The Supreme Court also stated: “[T]hat historically both civil and criminal trials have been presumptively open” (id. at 1668, quoting 448 US at 580 n 17; see also, Nixon v Warner Communications, Inc., 435 US 589 [1978] [finding that there was a common-law right to inspect and copy judicial records]).
Indeed, the “sealing of court records acts as a prior restraint on the First Amendment rights of the media to report, and ‘[a]ny system of prior restraints of expression . . . bear[s] a heavy presumption against its constitutional validity’ ” (Doe v Bellmore-Merrick Cent. High School Dist., 1 Misc 3d 697, 698 [Sup Ct, Nassau County 2003], quoting New York Times Co. v United States, 403 US 713, 714 [1971]). And, since the right of access to court proceedings is of constitutional dimension, any order denying access must be narrowly tailored to serve compelling objectives, such as a need for secrecy that outweighs the public’s right to access (Danco Labs., supra, citing Globe Newspaper Co. v Superior Ct., 457 US 596, 605-607 [1982]).
However, the right of the public, and the press, to access, inspect and copy judicial records is not absolute or unfettered, *877 and involves judicial discretion (Bellmore-Merrick Cent. High School Dist., supra). Moreover, access may still be respected in keeping with constitutional requirements while sensitive information is restricted in keeping with “the State’s legitimate concern for the well-being” of an individual (Globe Newspaper Co. v Superior Ct. at 609).
In accordance with the presumption against the sealing of court records and the presumption against any prior restraint on expression, plaintiffs must demonstrate that public or press access to the records is likely to harm a compelling interest to plaintiffs, and that no alternative to sealing can adequately protect the threatened interest (Bellmore-Merrick Cent. High School Dist., supra).
Plaintiffs’ privacy interests, although not recognized under New York State’s common law, is found in the Civil Rights Law (see Stephano v News Group Pubis., 64 NY2d 174, 182 [1984]; Arrington v New York Times Co., 55 NY2d 433, 440 [1982]). Consistent with this position, plaintiffs point to Civil Rights Law § 50-b which states:
“1. The identity of any victim of a sex offense, as defined in article one hundred thirty or section 255.25 of the penal law, or of an offense involving the alleged transmission of the human immunodeficiency virus, shall be confidential. No report, paper, picture, photograph, court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection. No such public officer or employee shall disclose any portion of any police report, court file, or other document, which tends to identify such a victim except as provided in subdivision two of this section.”
A fair reading of Civil Rights Law § 50-b indicates that this statute only applies to public officials or employees, and, therefore, the statute does not expressly affect the First Amendment’s freedom of the person or penalize media accounts of sexual offenses lawfully obtained, including the accurate publication of the name of the rape victim (Deborah S. v Diorio, 153 Misc 2d 708 [Civ Ct, NY County 1992], citing Cox Broadcasting Corp. v Cohn, 420 US 469 [1975]; The Florida Star v B.J.F., 491 US 524 [1989]).
There is a critical difference “between a restraining order directed against the press — a form of censorship which the First *878 Amendment sought to abolish from these shores” and an order directed solely against the participants in this action (Application of Dow Jones & Co., Inc., 842 F2d 603, 608 [2d Cir 1988]). “The most offensive aspect of a prior restraint is the censorship involved by forbidding the dissemination of information already known to the press.” (Id.) However, where a restraining order is not directed at the news agencies such that they therefore cannot be haled into court for violating its terms, such order would be considerably less intrusive of First Amendment rights.
Here, plaintiffs argue that such a distinction should not be made where the news gathering entity falls under the umbrella of the named defendant. Even assuming that Washington Square News is a party in this action by virtue of its relationship with NYU, which this court does not find, plaintiffs have not cited, and the court is unaware of, any case law to support the proposition that the news reporting exception to Civil Rights Law § 50-b does not apply where the news reporting agency is the defendant.
Furthermore, embarrassment, damage to reputation and the general desire for privacy do not constitute good cause to seal court records (Visentin v Haldane Cent. School Dist., 4 Misc 3d 1018[A], 2004 NY Slip Op 50937[U] [Sup Ct, Putnam County 2004], citing Liapakis v Sullivan, 290 AD2d 393, 394 [1st Dept 2002]; Matter ofBenkert, 288 AD2d 147 [1st Dept 2001]; Matter of Hofmann, 284 AD2d 92, 94 [1st Dept 2001]).
It bears noting that plaintiffs filed this action using their true identities, and that it is undisputed that Washington Square News obtained plaintiffs’ true identities through lawful methods of news gathering activities. Since the information sought to be protected, to wit, plaintiffs’ true names, is already a matter of public record, plaintiffs cannot show the effectiveness of issuing a sealing order at this juncture. Thus, since plaintiffs failed to demonstrate a compelling interest to seal the entire file, the sealing of the record is inappropriate (Doe v Bellmore-Merrick Cent. High School Dist., 1 Misc 3d 697 [Sup Ct, Nassau County 2003]).
Accordingly, although Civil Rights Law § 50-b provides a limited right of privacy, plaintiffs’ privacy interests do not warrant the overbroad remedy of sealing, and Washington Square News may not be precluded from publicizing plaintiffs’ names, which were lawfully obtained (see Doe v Bellmore-Merrick Cent. High School Dist., supra).
Granting the party the right to proceed anonymously, on the other hand, is not the equivalent of sealing records and does not *879 prevent the public from accessing records (id. at 701). When a court is deciding whether to allow a plaintiff to proceed anonymously, the ultimate inquiry must be whether “the plaintiff has a substantial privacy right which outweighs the ‘customary and constitutionally-embedded presumption of openness in judicial proceedings’ ” (Milani, Doe v Roe: An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort, 41 Wayne L Rev 1659, 1681 [1995]). Some guidelines for the exercise of this discretion in considering anonymity requests have been recognized including:
“[W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; . . . whether the action is against a governmental or private party; and . . . the risk of unfairness to the opposing from allowing an action against it to proceed anonymously” (id. at 1682).
Plaintiffs’ anonymity should be permitted “where a substantial privacy interest is involved” (id. at 1684). Embarrassment or economic harm to the plaintiffs is insufficient, but factors to consider as to whether plaintiffs’ situation is “compelling,” involving “highly sensitive matters” including “social stigmatization,” or “where the injury litigated against would occur as a result of the disclosure of the plaintiffs identity” (id.). Further, the fact that plaintiffs’ action seeks monetary damages does not affect the plaintiffs’ request to proceed anonymously, since monetary damages may be the only relief appropriate or available to those claiming “psychological suffering” that has occurred in the past and is not amenable to injunctive or other equitable relief (id.).1
In support of their motion, plaintiffs essentially contend that they will be subject to embarrassment, stigma and humiliation as a result of the continued disclosure and possible publication of their identities. Plaintiffs seek concealment of their identities and the sealing of court records in order to obviate any harm to their privacy by virtue of the nature of the injuries suffered as a result of the sexual assault.
During oral argument, Washington Square News conceded that their only objection to the application for use of pseudonyms *880 was on principle if they prevailed on the right to publish plaintiffs’ names.
It has been noted that:
“Upon approving the above legislation, on July 1,
1991, the New York Governor, Mario M. Cuomo, stated in his Governor’s Memorandum, as follows:
“ ‘[SJexual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy. All too often identifying the victim results in a public recounting of the details of the crime.’
“ ‘The release of such identifying information does not serve the interest of justice. Indeed, it does a gross disservice to both the victim and the public. Concerns pertaining to privacy sometimes result in a victim failing to report a sexual offense. In its final report, the Governor’s Task Force on Rape and Sexual Assault documented that sexual offenses are vastly underreported. Undoubtedly, there is even less incentive for a victim to report the sexual assault if his or her identity may become public.’
“ ‘Media accounts of sexual offenses, including reports of the victim’s identity, are not affected by the bill as the new right of action only attaches to violations of section 50-b which, by its terms, applies solely to public officials. While this bill is not designed to have an effect on the media, it will be an important safeguard for the privacy of sexual offense victims’ ” (Deborah S. v Diorio, 153 Misc 2d at 718-719).
As alleged in this case, plaintiffs, the victims of sexual assault, have suffered emotional distress. Plaintiffs have allegedly undergone psychotherapy. The use of pseudonyms will avoid any sensational publicity associated with the widely recognized university, NYU. The court recognizes that the right of access under the First Amendment asserted by Washington Square News is not absolute, and that redaction has been held a viable option, predicated upon the required level of need (Danco Labs., supra, 274 AD2d at 8). Thus, in accordance with the principles outlined above, and in lieu of sealing, the court records may be amended by replacing plaintiffs’ names with pseudonyms, so as *881 to protect plaintiffs’ privacy. Given that Washington Square News already possesses the true names of plaintiffs (which were obtained legally) and may exercise its right to publicize plaintiffs’ names, the use of pseudonyms by plaintiffs in this proceeding is appropriate.
Accordingly, it is hereby ordered that the branches of the motion by Washington Square News to intervene in this matter for purposes of opposing plaintiffs’ motion, and for an order denying plaintiffs’ application to seal court records containing plaintiffs’ true names is granted; and it is further ordered that the branch of the motion by Washington Square News for an order denying any permanent prohibition of the publication of plaintiffs’ actual names is granted to the extent noted below; and it is further ordered that plaintiffs’ application for an order permitting plaintiffs to file an amended complaint to replace their names with pseudonyms pursuant to Civil Rights Law § 50-b is granted; and it is further ordered that plaintiffs’ application for an order sealing all court records that contain their true names pursuant to 22 NYCRR 216.1 and CPLR 3103 is denied; and it is further ordered that plaintiffs’ application for an order permanently enjoining NYU or any of its affiliates from publishing names, or in any other way making the identities of the plaintiffs to this action known, is granted to the extent that NYU, and not Washington Square News, is permanently enjoined from publishing the names or true identities of plaintiffs; and it is further ordered that plaintiffs’ application for an order granting a permanent injunction to protect the plaintiffs’ identities retroactively and in perpetuity is denied, except as noted above.

. Plaintiffs’ motion bears sequence No. 001. A motion by Washington Square News to, inter alia, intervene for purposes of opposing plaintiffs’ motion bears sequence No. 002. Both motions are consolidated for joint disposition and are determined herein.

. CPLR 3103 permits a court, upon motion of any party “from whom discovery is sought,” to make a protective order denying or hmiting “the use of any disclosure device.” Although CPLR 3103 is designed to “prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person,” this section appears to apply to instances where a party seeks relief from providing discovery of information contained in disclosure devices. While plaintiffs have cited to this section as a basis of the relief sought, they have not presented any arguments in support of confidentiality under this section.

. Washington Square News Constitution, “Statement of Purpose” (exhibit P-1AAAC).

. According to Black’s Law Dictionary, the definition of privity includes “mutuality of interest.” (Black’s Law Dictionary 1237 [8th ed 2004].) According to the Oxford English Dictionary, privity is defined as “mutual interest in any thing or transaction.” (12 Oxford English Dictionary 524 [2d ed].)

. The court wishes to acknowledge its use of the following in this section of the decision: Adam A. Milani, Doe v Roe: An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort, 41 Wayne L Rev 1659 (1995).