OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendant, Lamar of Penn, LLC, doing business as Lamar Advertising of Rochester (incorrectly named in the complaint as Lamar Advertising), moves for an order pursuant to CPLR 3211 (a) (7) and 3126 granting summary judgment on its affirmative defenses and counterclaims and issuing the following declaratory relief: (1) dismissing the amended complaint with prejudice; (2) entering judgment permanently enjoining the Town of Macedón from interfering with the advertising signs owned by Lamar that are at issue in this litigation, including precluding the Town from seeking to remove or alter such signs in any way; (3) in the alternative, dismissing the complaint for failure to name and join indispensable parties; and (4) issuing a protective order or similar order prohibiting the dissemination of specified information submitted by Lamar on this motion except as specified.[1]
Lamar is an entity engaged in the business of outdoor advertising nationwide, including in Western New York. Lamar alleges that it acquired signs on Route 31 in the Town of Mac *419 edon over 10 years ago, and permits for the expansion of the Route 31 signs were issued to Lamar in the late 1990s. Following the issuance of the permits, Lamar invested in upgrades to the Route 31 signs and negotiated with clients for the placement of advertising on them. (Nersinger affidavit 1Í1Í12-14.)
In March of 2000, Lamar received correspondence from the Town of Macedón requesting Lamar’s cooperation in arranging to have the billboards removed. (Id. 1T1Í14-15.) In response to this request, Lamar notified the Town that it believed that under applicable state and federal law, the Town could only demand removal of the signs if adequate compensation was paid to Lamar. Lamar states that it heard nothing from the Town after this until the filing of the instant suit in June 2005.
The amended complaint cites the following section of the Macedón Town Code, enacted by local law:
“The intent of these regulations is to promote and protect public health, welfare and safety by regulating and restricting the erection, construction, repair, removal, alteration and maintenance of signs and other advertising devices in the Town. The regulations are designed to promote public safety, protect property values, create a more attractive economic climate and enhance the scenic and natural beauty of the Town.” (Macedón Town Code § 135-188.)
Moreover, section 135-201 states:
“In case of any new violation o[f] any of the provisions of this chapter or conditions imposed by the Town Board, Planning Board or Board of Appeals, in addition to other remedies herein provided, the Town Board may institute any appropriate action or proceeding to prevent such unlawful erection, structural alteration, reconstruction, moving and/or used to restrain, correct or abate such violation, to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises.”
Section 135-195 (B) states:
“Any existing sign erected before the adoption of this chapter for which a permit was issued and which would be in violation under the provisions of this chapter, shall be allowed to continue for a period of not more than 10 years from the effective date of this chapter. At the end of the ten-year pe *420 riod, all such nonconforming signs shall be removed.”
Amendments to the Town Code enacted by the Macedón Town Board in 1990 created an amortization period of 10 years for compliance.
Plaintiffs third, fifth, sixth, seventh, eighth and ninth causes of action are stated against Lamar. The third, fifth, seventh and eighth causes of action seek a mandatory injunction requiring Lamar to remove the Route 31 billboards (each cause of action relates to a specifically placed billboard on Route 31), and alleges that the billboards violate Macedón Town Code § 135-189 (L). That section states: “Except for off-premises directional signs regulated by § 135-193, no sign advertising a business use or service other than that provided on the premises on which said sign is located shall be permitted.” The ninth cause of action seeks the imposition of a civil penalty of $100 per day pursuant to Macedón Town Code § 135-200 (B) for a violation of chapter 135 of the Macedón Town Code with respect to each billboard Lamar has on Route 31.
Lamar’s answer to the amended complaint states the following affirmative defenses: failure to state a cause of action; laches, unclean hands and/or statute of limitations; doctrines of preexisting conforming or nonconforming use and/or established rights; and failure to name and serve necessary parties. Lamar also states the following counterclaims/affirmative defenses in the answer: declaratory and injunctive relief together with damages stemming from the “facial unconstitutionality of the Macedón Town Code” (answer 1i 17); a declaration that the Macedón Town Code is unconstitutional and a permanent injunction enjoining its enforcement because it regulates the content of billboards and favors certain speech causing an abridgment of free speech rights; a declaration of unconstitutionality and injunction because the Code denies Lamar due process and freedom of speech rights; a judgment seeking a declaration that the Code was unlawfully enacted and is thus null and void because Macedón did not provide notice and/or Lamar did not receive notice of revisions or amendment to the Code and has been deprived of procedural and substantive due process rights; money damages based on the value of Lamar’s property and a declaration that the Code as it relates to billboards is null and void and that Lamar is authorized to continue to maintain the signs; a declaration that the Code as it relates to billboards is contrary to the policy of federal and state law and dismissal of *421 plaintiff’s complaint, or in the alternative that Lamar be compensated for the taking of its property.
To the extent Lamar mistakenly cited CPLR 3211 (a) (7) and 3126 as grounds for “summary judgment,” that mistake is disregarded by the court pursuant to CPLR 2001.
CPLR 3212
It is well settled that “the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact.” (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986] [citations omitted]; see also Potter v Zimber, 309 AD2d 1276, 1276 [4th Dept 2003] [citations omitted].) “Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution.” (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003], citing Alvarez, 68 NY2d at 324.) “Failure to make such showing requires denial of the motion, regardless of the sufficiency of the responsive papers.” Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985] [citation omitted]; see also Hull v City of N. Tonawanda, 6 AD3d 1142, 1142-1143 [4th Dept 2004].) When deciding a summary judgment motion, the evidence must be viewed in the light most favorable to the nonmoving party. (See Russo v YMCA of Greater Buffalo, 12 AD3d 1089 [4th Dept 2004].) The court’s duty is to determine whether an issue of fact exists, not to resolve it. (See Barr v County of Albany, 50 NY2d 247 [1980]; Doliendo v Johnson, 147 AD2d 312, 317 [2d Dept 1989].) Lamar’s summary judgment motion is aimed at the following arguments: Lamar is entitled to adequate compensation as a condition precedent to removal of the signs pursuant to Highway Law § 88, certain provisions in the Macedón Town Code are unconstitutional and should be stricken, and plaintiffs failure to join the lessors of the land in this suit was an error.
Highway Law § 88
Highway Law § 88 (7) states:
“The commissioner of transportation is hereby authorized to acquire the necessary rights in and to property and is directed to pay compensation therefor, in the same manner as other property is acquired for state highway purposes pursuant to this chapter and is further directed to provide equiv *422 alent directional information, as provided in subdivision eleven of this section, with respect to outdoor advertising signs, displays and devices which are not permitted or authorized pursuant to this section or with the terms of the agreement ratified and approved by this section and which were lawfully erected under state law. Such compensation is authorized to be paid only for the following: (a) the taking from the owner of such sign, display or device of all right, title, leasehold and interest in such sign, display or device, and (b) the taking from the owner of the real property on which such sign, display or device is located, of the right to erect and maintain such signs, displays and devices thereon. The term ‘property’ as used in this section is defined to include lands, waters, rights in land or waters, structures, franchises, and interest in land, including lands under water and riparian rights and any and all other things and rights usually included within the said term and includes also any and all interests in such property less than full title, such as easements, permanent or temporary, rights-of-way, uses, leases, licenses and all other incorporeal hereditaments and every estate, interest or right, legal or equitable. Notwithstanding the provisions of subdivision two hereof, no rights in and to property shall be acquired with respect to any outdoor advertising sign, display or device except to the extent that federal funds authorized to be appropriated pursuant to the federal ‘Highway Beautification Act of 1965’, as amended, to reimburse the state for seventy-five per centum of the cost thereof, are in fact appropriated and allocated to the state for that purpose. Further, notwithstanding the provisions of this section or any other general, special or local law, no outdoor advertising sign for which compensation must be paid pursuant to this subdivision, nor any outdoor advertising sign in a commercial or industrial zone or area which is controlled pursuant to this section, shall be removed, or required to be removed, by the state or any agency thereof or any municipal corporation or subdivision, without the payment of such compensation in accordance with the provisions of article five of the eminent domain procedure law, provided, however, that this prohibition shall not apply to any *423 city having a population of one million or more.”
Lamar contends that Highway Law § 88 was enacted to give effect to the Federal Highway Beautification Act. Lamar further alleges that section 88 is to be read with a companion statute, General Municipal Law § 74-c. In reading these sections together, as well as legislative history, Lamar argues that an amortization schedule may only be used for areas not subject to Highway Law § 88. General Municipal Law § 74-c states:
“1. If any local law, ordinance or resolution adopted by a municipal corporation in the exercise of its police power shall require the removal of any legally erected and maintained billboard or like outdoor advertising device, which is leased or rented for profit in areas zoned industrial or manufacturing, just compensation for said taking shall be determined in accordance with the provisions of article five of the eminent domain procedure law; provided, however, section five hundred two of such law shall not be applicable in any such proceeding.
“2. Unless compensation therefor is provided pursuant to section eighty-eight of the highway law, if any local law, ordinance or resolution adopted by a municipal corporation in the exercise of its police power shall require the removal of any legally erected and maintained billboard or like outdoor advertising device, which is leased or rented for profit, and which is located in an area or zone, other than an industrial or manufacturing zone, the display shall be allowed to remain in existence for the period of time set forth below after giving notice of the removal requirement:
fair market value on date of notice of removal requirement minimum years allowed
under $1,999 3
$2,000 to $3,999 4
$4,000 to $5,999 6
$6,000 to $7,999 7
$8,000 to $9,999 9
$10,000 and over 10
*424 “If the removal is required sooner than the amortization periods specified herein, such removal by any local law, ordinance or resolution adopted by the municipal corporation shall be with just compensation being paid for such taking and removal determined in accordance with the provisions of article five of the eminent domain procedure law or in accordance with any table of values established by the state department of transportation; provided however section five hundred two of the eminent domain procedure law shall not be applicable to any such proceeding.
“Notwithstanding any other law, rule or regulation, all amortization periods under such laws, ordinances or resolutions shall commence not earlier than January first, nineteen hundred ninety.
“3. The provisions of this section shall not apply to any city having a population of one million or more.”
Lamar alleges that the procedures for determining just compensation in these circumstances are set forth in the Eminent Domain Procedure Law and that amortization is not available. Because the signs at issue are within 660 feet of federal aid highways or qualifying interstates, Lamar concludes that the New York statutes, along with the Federal Highway Beautification Act, require the payment of just compensation to owners of such advertising signs.
Plaintiff responds alleging that this matter was definitively resolved by Matter of Suffolk Outdoor Adv. Co. v Town of Southampton (60 NY2d 70 [1983]). In Suffolk, the Court of Appeals held that, notwithstanding the provisions of the Federal Highway Beautification Act, compensation need not be paid by a municipality which requires removal of outdoor advertising billboards, provided a reasonable amortization period is allowed by the removal ordinance. Lamar attempts to marginalize the importance of the Suffolk decision, noting that it was decided before the 1989 amendment to Highway Law § 88. Plaintiff rejects Lamar’s contention that Suffolk was legislatively overruled by section 88 of the Highway Law, noting that the Legislature made no specific mention of its intent to overrule Suffolk, that other state courts have deemed “compensation” to include amortization, and that efforts by some states to eliminate amortization as a form of compensation have not yet been enacted. Plaintiff also cites to a 1992 Stetson Law Review *425 symposium entitled Removal of Billboards: Some Alternatives for Local Governments (21 Stetson L Rev 899) for the proposition that amortization has not been removed as a proper method of compensation. Moreover, plaintiff highlights section 88 (9) of the Highway Law: “Nothing in this section shall be construed to abrogate or affect the provisions of any other statute, lawful ordinance, regulation pursuant thereto or resolutions which are more restrictive than the provisions of this section or the agreement ratified and approved by this section.”
“Municipal regulation of outdoor advertising for aesthetic and safety purposes . . . constitutes a valid exercise of the police power.” (RHP, Inc. v City of Ithaca, 91 AD2d 721, 721 [3d Dept 1982].) “In addition to this exercise of the police power, outdoor advertising located within 660 feet of the interstate and primary highway system is regulated by the Federal Highway Beautification Act of 1965 (US Code, tit 23, § 131) and its State counterpart, section 88 of the Highway Law.” {Id.) In 1978, the Federal Highway Beautification Act was amended to mandate the payment of “just compensation” for the removal of lawfully erected billboards. {Id.)
In 1989, Highway Law § 88 was amended, and it is that amendment which Lamar relies upon in arguing that just compensation is required herein. The court agrees with Lamar that Highway Law § 88, not General Municipal Law § 74-c, applies to this case. The General Municipal Law specifically states that the amortization schedules listed therein apply “[u]nless compensation therefor is provided pursuant to section eighty-eight of the highway law.” (General Municipal Law § 74-c [2].) As it is undisputed that the signs at issue herein are located within 660 feet of a federal aid highway {see R. Ner singer affidavit, dated Mar. 29, 2007, 1Í10),[2] Highway Law § 88 is applicable. {See Highway Law § 88 [3].) The inquiry then becomes whether amortization is sufficient “compensation” under Highway Law § 88.
The language of Highway Law § 88 (7) dictates that compensation must be made “in accordance with the provisions of article five of the eminent domain procedure law.” Thus, by its unambiguous language, section 88 provides for just compensation, not amortization. Moreover, the Assembly sponsor’s *426 memorandum in support of the legislation amending Highway Law § 88 and adding General Municipal Law § 74-c provides further insight. It appears that the first sentence refers to Highway Law § 88, whereas the second sentence refers to General Municipal Law § 74-c:
“This bill would require just compensation to be paid for the removal of signs on the Federal Interstate and Primary highway system. It would also require municipalities to pay just compensation for the removal of outdoor advertising signs in areas which have been zoned ‘industrial’ or ‘manufacturing’ (not residential, agricultural or commercial) to be removed without compensation after giving notice on an amortization schedule included within the bill.” (Assembly Introducer Mem in Support, Bill Jacket, L 1989, ch 335, at 13 [quoted in affidavit of J. Picciotti, exhibit D].)
Plaintiff points to the bill memorandum which indicates that there will be no cost to the State, inferring therefore that the Legislature intended to continue following the Court of Appeals decision in Suffolk, which allowed amortization instead of compensation. The court notes, however, that the bill memorandum states the following in full as to the “Fiscal Impact”:
“No cost to the State, since it is currently following the practices mandated by this legislation. Failure to pass this measure could result in a decrease of $40 to $70 Million in Federal Highway Aid to the State. Any costs to local governments in compensation payments would vary by locality and would depend on the locality’s decision to require the removal of a sign.” (Id. [emphasis added].)
The bill memorandum supports Lamar’s argument that just compensation pursuant to the Eminent Domain Procedure Law is required. Moreover, the State Legislature amended Highway Law § 88 after Suffolk to require compensation for the removal of billboards covered by the Highway Beautification Act.
Likewise, the Department of State’s written policy guidelines support Lamar’s position in a publication by its Division of Local Government Services issued in January 2006. That guide, entitled “Municipal Control of Signs,” states that billboards within 660 feet of a state or federal highway are not to be amortized:
“New York courts have held that municipalities may require the removal of nonconforming billboards and signs, after the expiration of an amortization *427 period long enough to allow the sign owner to recoup his or her investment. Amortization is the process of permitting a nonconforming sign to remain standing for a designated period of time after a new sign regulation has been implemented. At the end of that time period, the sign must either conform to the regulations or be removed. (While amortization is not permitted for signs along primary, National Highway System and Interstate Highways controlled by the Department of Transportation, removal by just compensation is permitted.) . . .
“In addition, Highway Law § 88 (7) provides that any legally permitted sign within the controlled area may not be removed or be required to be removed by a municipality or the state, without the payment of full compensation, pursuant to the Eminent Domain Procedure Law. Amortization is not permitted.” (Reply affidavit of J. Picciotti, exhibit A at 20, 23.)
Plaintiff’s reliance upon Highway Law § 88 (9) does not save its argument. That section states: “Nothing in this section shall be construed to abrogate or affect the provisions of any other statute, lawful ordinance, regulation pursuant thereto or resolutions which are more restrictive than the provisions of this section or the agreement ratified and approved by this section.” Highway Law § 88 (9) ensures that “[n]either Federal nor State law preempts the right of [a Town] in the exercise of its police power to require removal of billboards of the type dealt with by the town ordinance.” (Suffolk, 60 NY2d at 75.) The purpose of subdivision (9) is to ensure a locality’s right to exercise its police power to remove billboards, not to provide the locality with unfettered power to do so without compensation.
Lamar notes that Macedon’s Town Code, reproduced in relevant part, supra, contains no provisions requiring just compensation prior to the Town seeking removal of billboards. Lamar further notes that plaintiff has not offered any compensation for the same. Plaintiff contends that, when the permit was issued in 1998, it was issued eight years into the 10-year amortization period set forth in Macedón Town Code § 135-195, so Lamar had use of the permit obtained in 1998 only until 2000, the year the 10-year amortization period expired.
The Macedón Town Code’s provision for amortization and not compensation for billboards covered by Highway Law § 88 (billboards within 660 feet of a federal aid highway) is insuf *428 ficient. Plaintiff is required to pay Lamar just compensation before it can require Lamar to remove its advertising signs. As such, Lamar’s motion for summary judgment seeking dismissal of plaintiffs complaint as against it with prejudice is granted. On the facts and evidence presented to the court plaintiff is not entitled to the relief sought in the complaint, to wit, a judgment mandating and enjoining Lamar to remove the subject billboards. If the plaintiff wishes to proceed with the removal of the billboards, compensation pursuant to Highway Law § 88 must be paid. To the extent plaintiff asks the court to search the record and grant summary judgment in its behalf, that motion is denied.
In light of the court’s decision above, it does not reach that aspect of Lamar’s motion addressing the constitutional validity of the Town Code, and the failure to join necessary parties need not be addressed. Lamar acknowledged at oral argument that, if it won in the Highway Law § 88 issue, it did not need determination of those aspects of its motion. Accordingly, the parties must provide suggested scheduling deadlines on the counterclaims within 10 days.
Confidentiality Order
Lamar also seeks an order prohibiting the dissemination of certain information alleged to be confidential or proprietary business information. Section 216.1 of 22 NYCRR states the following with respect to sealing records:
“(a) Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties. Where it appears necessary and desirable, the court may prescribe appropriate notice and opportunity to be heard.”
“Thus, to overcome the presumption of openness,” a party bears “the burden of demonstrating that good cause exists to seal the court records.” (Doe v New York Univ., 6 Misc 3d 866, 874 [Sup Ct, NY County 2004].) To demonstrate the “good cause” required by the regulation, a party must establish that “ ‘compelling circumstances’ exist to justify secrecy.” (Id. at 874-875, quoting Coopersmith v Gold, 156 Misc 2d 594, 606 [Sup Ct, Rockland County 1992]; see also, Matter of Herald Co. v Weisenberg, 59 NY2d 378, 383 [1983].)
*429 At the outset, the court acknowledges that Lamar does not seek to have the entire court file sealed. Rather, Lamar seeks only that the affidavit of Rodolfo Aguilar, including the attached appraisal report, remain confidential. Good cause exists herein to seal the Aguilar affidavit and attached appraisal report. Given the sensitive nature of this proprietary business information and the minimal interest of the public with respect to having access to the information, good cause is shown. Lamar’s application to place the aforementioned proposed confidential information under seal is granted.

. Lamar moves for “summary judgment,” but cites CPLR 3211 (a) (7). CPLR 3211 (a) (7) relates to motions to dismiss a complaint for failure to state a cause of action. The court presumes that this section was cited by Lamar in error, and that Lamar intended to move pursuant to CPLR 3212. Moreover, the court fails to understand the relevance of CPLR 3126, the other section cited by Lamar as authority for “summary judgment.” CPLR 3126 provides penalties for refusal to comply with discovery orders. The motion before the court makes no reference to failure or refusal on plaintiffs part in this respect. Plaintiff ignores the discrepancy and recognizes that CPLR 3212 applies. Indeed it asks the court to search the record and grant it summary judgment.

. At oral argument, plaintiffs counsel suggested that there was no showing that Route 31 is a federal aid highway. But upon further questioning concerning the Ner singer affidavit and exhibits D and E thereto, counsel acknowledged it had no proof to the contrary.